# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | Case No. 4:17-cr-00041 |
| | § | Judge Mazzant |
| BRUCE ALLEN RUTHERFORD | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant Bruce Allen Rutherford's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Dkt. #138). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED.**

## BACKGROUND

On March 8, 2017, the Grand Jury for the Eastern District of Texas, Sherman Division, indicted Bruce Allen Rutherford with Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) ("Count One") (Dkt. #1).

On September 5, 2017, Defendant appeared before Magistrate Judge Marcia Crone for a change of plea hearing after a jury had been empaneled (Dkt. #41; Dkt. #54 at p. 3). Defendant subsequently pleaded guilty to Count One of the First Superseding Indictment—without a plea agreement (Dkt. #54). On May 9, 2018, the court sentenced Defendant to 150 months imprisonment, followed by a five-year term of supervised release (Dkt. #80 at pp. 2–3).

On June 25, 2020, Defendant filed a Request for Home Confinement due to purportedly high-risk factors for contracting COVID-19 and argued that he met the requirements outlined in 18 U.S.C. §3582(c)(1)(A)(ii) (Dkt. #99). On July 23, 2020, the Court construed Defendant's

Request for Home Confinement as a motion for compassionate release and denied it on the merits (Dkt. #104 at p. 12).

On December 1, 2020, Defendant filed a similar compassionate release request and argued that his health conditions and high-risk factors within the correctional facility for contracting the COVID-19 virus constituted "extraordinary and compelling" reasons to warrant his early release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. #117 at p. 1). On December 15, 2020, the court construed Defendant's motion as a requested reconsideration of the previous July 23, 2020 Memorandum and Order (Dkt. #119 at p. 1; Dkt. #104). The court denied Defendant's Motion for Compassionate Release, holding in relevant part that Defendant had not presented sufficient grounds for the court to reconsider its July 23, 2020, Memorandum and Order (Dkt. #119 at p. 1).

On October 6, 2025, the Defendant filed a *pro se* Motion to Reduce Sentence in accordance with the First Step Act (Dkt #138). Defendant argues that his current medical condition is sufficient under U.S.S.G. § 1B1.13(b)(1)(B) and (C) to constitute an "extraordinary and compelling" reason to warrant a sentence reduction (Dkt. #138).

## LEGAL STANDARD

### I.    18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

(A)  the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

   (i)   extraordinary and compelling reasons warrant such a reduction; or

   (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the

---

[1]  This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

Director of the [Bureau of Prisons] . . . ." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.     Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); and then *United States v. Franco*, 973

4

F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *Garrett*, 15 F.4th at 338).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam) (unpublished) ("Because the statutory language is mandatory . . . we must enforce this procedural rule . . . ."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend County. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015,

---

[2]    The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

### III.    U.S.S.G.'s Policy Statement

#### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D).

First, whether the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "managed effectively by

6

medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (per curiam) (unpublished) (citation modified).

Third, whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility

must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F. Supp. 3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

---

[3]   *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4]    *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5]    End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6]    *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7]    *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

(B)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D) (emphasis added).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) ("Without medical evidence [of the] father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Romano*, 707 F. Supp. 3d at 237–38. The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez*, No. 23-50404, 2024

10

WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).

### D.      Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. §§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.      Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. §§ 1B1.13(b)(1)–(4). *Id.*

11

§ 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

      **F.**      **Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))**

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

**IV.**    **The 18 U.S.C. § 3553(a) Factors**

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing

Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *Rollins*, 53 F.4th at 358.

---

[8]    18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

## ANALYSIS

Defendant now moves for compassionate release, arguing that his current medical condition is sufficient to constitute an "extraordinary and compelling" reason to warrant a sentence reduction. While Defendant has met Section 3582(c)(1)(A)'s exhaustion requirement, as it is deemed waived by the Court, the Court finds that Defendant's medical condition does not constitute an "extraordinary and compelling" reason under either U.S.S.G. § 1B1.13(b)(1)(B) or (C) to warrant his compassionate release. Additionally, even if Defendant's medical condition did constitute an "extraordinary and compelling" reason to warrant compassionate release, the § 3553(a) factors do not weigh in favor of Defendant's motion for compassionate release.

## I.    Defendant Has Satisfied the Exhaustion Requirement Under § 3582(c)(1)(A).

The Court first addresses the exhaustion requirement. Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); and then *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)). Here, Defendant alleged that he submitted a request for compassionate release to the warden on April 28, 2025—which was later denied on May 5, 2025 (Dkt. #138). Nevertheless, Defendant failed to provide any tangible evidence with which to support a finding that he successfully exhausted his administrative remedies before he filed this Motion (*See* Dkt. #138). However, "if the Government does not invoke the exhaustion requirement argument, the Court will deem the matter waived for the purposes of considering a defendant's motion under § 3582(c)(1)(A)." *United States v. Romero*, No. 4:16-CR-93-ALM-AGD-3, 2026 WL 1146371, at *7 (E.D. Tex. Apr. 28, 2026). Accordingly, because the Government declined to invoke the exhaustion requirement in this case, any argument

that Defendant failed to exhaust his administrative remedies is deemed waived. Thus, the Court will next address the merits of the motion.

## II.    Defendant's Medical Condition Does Not Constitute an Extraordinary and Compelling Reason to Warrant Compassionate Release.

Defendant's arguments for compassionate release fall under U.S.S.G. § 1B1.13(b)(1)(B) and (C). Section 1B1.13(b)(1)(B) provides that "extraordinary and compelling" circumstances are present when the defendant is (i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process. Additionally, § 1B1.13(b)(1)(C) asks the Court to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided within the correctional facility and without which the defendant is at risk of serious deterioration in health or death." Defendant argues that his medical condition meets the criteria for both § 1B1.13(b)(1)(B) and (C) such that it constitutes an "extraordinary and compelling" reason to warrant compassionate release. The Court addresses each argument in turn.

### A.    Defendant has not met the U.S.S.G. § 1B1.13(b)(1)(B) standard.

First, Defendant has not shown that he has a serious physical or medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." § 1B1.13(b)(1)(B). This exacting standard is described in *United States v. Muniz*, 612 F. Supp. 3d. 699, 701 (S.D. Tex. 2020), wherein a district court found that an incarcerated defendant had a substantially diminished ability to provide self-care on account of his end-stage renal disease and his mandated use of a wheelchair following the amputation of his foot. *Id.* at 701. Here, Defendant alleges that he is similarly wheelchair-bound on account of a spinal

15

surgery complication on June 16, 2024, from which he ultimately acquired polyneuropathy from the waist down (Dkt. #138). While Defendant's medical records confirm the diagnosis and indicate that it is chronic, the records provide little to no evidence of the necessity of a mobility aid (Dkt. #138-2; Dkt. #138-3). On the contrary, the record states that Defendant can sit, stand, and walk around without constituting a fall risk (Dkt. 138-3). Also, the record indicates that Defendant has retained his independence post-surgery in almost all aspects of his daily living and self-care activities. For instance, he can safely ambulate with the support of a rollator for short distances and is generally mobile within the correctional facility environment. Thus, Defendant has failed to establish either a serious physical or medical condition and has further failed to establish that he is presently suffering from a serious functional or cognitive impairment under § 1B1.13(b)(1)(B)(i)–(ii).

Furthermore, any consideration of the "aging process" standard outlined in § 1B1.13(b)(1)(B)(iii) would not change this outcome. Even if such an argument were sufficiently raised and considered, the Court would still conclude that Defendant has failed to establish an "extraordinary and compelling" reason justifying his early release. While Defendant is older than sixty-five, he did not establish that he is suffering from a serious deterioration in his physical or mental health, or that such deterioration has been brought about because of the aging process. Defendant instead focuses his argument entirely on the hardship created by his medical condition (*See* Dkt. #138).

Because Defendant has not provided sufficient evidence to suggest that he suffers from a condition or impairment that substantially diminishes his ability to provide self-care within the correctional facility, the Court finds that Defendant's medical condition does not constitute an

16

"extraordinary and compelling" reason to warrant compassionate release under U.S.S.G. § 1B1.13(b)(1)(B).

### B.      Defendant does not meet the U.S.S.G. § 1B1.13(b)(1)(C) standard.

Second, Defendant has not shown that he suffers from a medical condition that requires specialized care that is not being provided within the correctional facility. *See* § 1B1.13(b)(1)(C). Defendant argues that the BOP has no treatment for his medical condition, claims he can receive treatment outside of the correctional facility, and claims that his "medical condition is getting worse over time" (Dkt. #138). General complaints about long-term issues, without accompanying medical proof of the condition or details regarding ongoing deterioration, are generally insufficient to satisfy the "extraordinary and compelling" reason requirement. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient). Here, on the contrary, the prison medical records show that the BOP has adequately provided medicinal substitutes[9] and rehabilitation[10] to Defendant (Dkt. #138; Dkt. #138-2; Dkt. #138-3). The prison medical records further show that Defendant's

---

[9]  Neurosurgery recommended long-acting Lyrica 330 mg, but Defendant is prescribed short-acting Lyrica 150 mg due to pharmacy constraint (*See* Dkt. #138; Dkt. #138-2).

[10]  Prison medical record shows Defendant received six weeks of rehabilitation following his June 16, 2024, surgery and indicates that additional rehabilitation will provide minimal results (*See* Dkt. #138-3).

lower extremity strength is fully functional and that Defendant only utilizes his wheelchair because his feet begin to burn when standing or walking (*See* Dkt. #138; Dkt. #138-3). Moreover, the record indicates that the BOP encouraged Defendant to complete specific exercises during recreation time in response to Defendant's complaints that he did not know what exercises he should be doing, which signifies the availability of treatment for his condition despite his incarceration (Dkt. #138-3). Defendant's claims are not based on facts as presented in the record, which show that Defendant's medical condition is and has been adequately treated by the correctional facility and that there is no other significant risk to his health from his specified medical condition.

Therefore, because the record shows that Defendant's medical condition is adequately provided for and does not pose a significant risk to his health, the Court finds that Defendant's medical condition does not constitute an "extraordinary and compelling" reason to warrant compassionate release under U.S.S.G. § 1B1.13(b)(1)(C).

### III.    The § 3553(a) Factors

In the instant case, the Court has found that no "extraordinary and compelling" reason exists under § 3553(a) to warrant Defendant's compassionate release. Nevertheless, even if Defendant had established such "extraordinary and compelling" reasons, the Court would still be faced with the prospect of evaluating the sentence factors under 18 U.S.C. § 3553(a) to determine if they outweigh granting compassionate release in favor of Defendant. *United States v. Shaw*, No. 4:15-CR-134-03, 2025 WL 2496156, at *11 (E.D. Tex. Aug. 29, 2025). Under § 3553(a)(2)(A), the Court is asked to address the defendant's history and characteristics, seriousness of the offense, the need to deter criminal conduct, the need to protect the public, respect for the law, and provide a just punishment. *United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *5 (N.D. Tex. July 10, 2023).

Even when these factors are considered, they do not adequately support Defendant's motion. The nature and circumstances of the offense clearly show that his criminal offense was serious. Defendant pleaded guilty to possession of child pornography in a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Dkt. #54). The seriousness of these crimes is evidenced by the fact that Defendant received a sentence of 150 months (Dkt. #80). Furthermore, despite Defendant not having any disciplinary infractions from the BOP, he has failed to provide any evidence suggesting that he will no longer be a danger to the community. Accordingly, because there is limited evidence to show otherwise, this Court does not agree that Defendant is no longer a danger to the community.

Finally, an early release for Defendant would not promote respect for the law, afford adequate deterrence to criminal conduct, nor protect the public from further crimes of Defendant. Moreover, it would unjustly support a disparity in light of the existence of similar sentences imposed upon defendants for similar conduct. Therefore, this Court does not agree that an early release for Defendant would promote respect for the law.

## CONCLUSION

It is therefore **ORDERED** Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582 (c)(1)(A) (Compassionate Release) (Dkt. #138) is hereby **DENIED.**

It is further **ORDERED** that Defendant's request for appointment of counsel is hereby **DENIED.**

**IT IS SO ORDERED**.

**SIGNED this 23rd day of June, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE